THE M. J. ROSE CO. *v.* LOWERY.

490

(Decided October 17, 1929.)

*Mr. Russell J. Burt,* for plaintiff in error.
*Mr. L. B. McMillen,* for defendant in error.

LEMERT, J. The basis of this action in the court of common pleas was the unlawful breaking and entering of the dwelling house of defendant in error, Alta Lowery, during the absence of herself and her husband, by the plaintiff in error, the M. J. Rose Company, and the removal therefrom of certain furniture owned by plaintiff and her husband.

The record in this case shows the material facts to be as follows: On or about February 24, 1928, Alta Lowery, who was then living apart from her husband, Howard G. Lowery, purchased of the M. J. Rose Company certain furniture. As part payment for the furniture, Mrs. Lowery traded in certain old furniture which had belonged to her and her husband. There was a balance of approximately $370 on the purchase price of the new furniture, for which Mrs. Lowery executed her note and chattel mortgage. The chattel mortgage contained the usual clause providing for the repossession of the property upon default of payments.

Some time during the month of April, 1928, Alta Lowery and her husband settled their differences, and on or about April 15 they rented the dwelling

house at 708 Third Street, Northwest, Canton, Ohio, into which Mrs. Lowery moved the furniture purchased from the M. J. Rose Company.

On June 12, 1928, Mrs. Lowery was taken to the hospital for an operation. She remained at the hospital until July 3d, and on June 23, 1928, when Mrs. Lowery was in the hospital, her husband was notified by the M. J. Rose Company that the payments on the furniture were in arrears and that unless they were paid the furniture would be repossessed. Mr. Lowery informed Mr. Worms, the manager of the M. J. Rose Company, that he could not meet the payments, and he refused to sign the note and chattel mortgage, and informed Mr. Worms that if they sent the driver of the M. J. Rose Company out before 3 p. m. of that afternoon he would allow them to take the furniture. Mr. Lowery waited until five minutes of 4. He then locked the house, put the key under the mat, and went on an errand. He returned in about 45 minutes and found the door still locked, but the furniture was gone.

The record shows that Mrs. Lowery had negotiated with Mr. Worms to change some part of the furniture which she had purchased from the company for other furniture, and that she had been informed that she might delay her payments until the change was made, and that this was the reason the payments were in arrears.

After the admission of plaintiff's testimony in this case, counsel for defendant, the M. J. Rose Company, moved for a directed verdict. The motion was by the court below overruled.

The record shows, without going into great detail and taking matters up specifically, that the M.

J. Rose Company attempted to show that there was no breaking and entering of the house. This was a matter for the jury, and the jury upon that issue found in favor of the plaintiff below, and, upon submission of the case to the jury, the jury returned a general verdict for the plaintiff below against the defendant below in the sum of $925.16. The court thereafter overruled a motion for a new trial, but ordered a *remittitur* of $200, and judgment was entered against the defendant below for $725.16.

The question presented in this case is whether or not a provision in a chattel mortgage for the possession of property upon defaulted payments justifies the mortgagee in breaking and entering the dwelling house of the mortgagor in order to repossess the property.

We find the law in Ohio and other jurisdictions to be that the law will not permit the sanctity of one's dwelling house, which from very ancient times has been regarded as his castle, to be violated in this manner. *Edmundson* v. *Pollock,* 5 C. C., 185, 3 C. D., 92; *Huppert* v. *Morrison,* 27 Wis., 365.

The entry of a dwelling house effected by unlatching of a door that is only latched, or by opening the lock of a door with a key, without the consent of the owner, is an unlawful breaking and entering. *Timmons* v. *State,* 34 Ohio St., 426, 32 Am. Rep., 376.

In an action to recover damages for wrongful act, like wilful and intentional, or with a reckless disregard of the rights of the injured party, the jury may go beyond the rule of mere compensation to the party aggrieved, and award exemplary or punitive damages. In such a case the jury may in their estimate take into consideration and include reasonable

fees of counsel employed by plaintiff in the prosecution of his action. *Cleveland & P. Rd. Co.* v. *Stackhouse,* 10 Ohio St., 567; *W. U. Tel. Co.* v. *Smith,* 64 Ohio St., 106, 59 N. E., 890; *Greif* v. *Kiewell,* 18 C. C. (N. S.), 450, 33 C. D., 153; *Royal Furniture Co.* v. *Weist,* 23 C. C. (N. S.), 425, 34 C. D., 327.

"A corporation may be subjected to exemplary or punitive damages for tortious acts of its agents or servants done within the scope of their employment, in all cases where natural persons, acting for themselves, if guilty of like tortious acts, would be liable to such damages." *Atlantic & G. W. Ry. Co.* v. *Dunn,* 19 Ohio St., 162, 2 Am. Rep., 382.

In an action for intentional and wilful wrongful act, humiliation, injury to feelings and mental suffering, naturally and necessarily resulting from the wrongful act, may be considered by the jury in their estimate of compensatory damages. *Smith* v. *P., Ft. W. & C. Ry. Co.,* 23 Ohio St., 10; *Cincinnati Northern Trac. Co.* v. *Rosnagle,* 84 Ohio St., 310, 95 N. E., 884; *Cleveland City Ry. Co.* v. *Ebert,* 19 C. C., 725, 10 C. D., 291.

Counsel for plaintiff in error urges misconduct on the part of counsel for defendant in error, and makes the further claim that the verdict is excessive and influenced by passion and prejudice, and that the court erred in overruling the motion of defendant below for a directed verdict. He also contends that the plaintiff below persisted in asking leading questions during the trial of the case.

In regard to the first error claimed, we note, from a careful examination of the record before us, that without any apparent reason an intense and bitter feeling seemed to exist between counsel for plaintiff

in error and counsel for defendant in error. What brought this about, or why this was so, the record fails to disclose. The record discloses that when counsel for either party would make an objection, and after that objection had been passed upon by the court, counsel would then persist in arguing the matter further to the court, and not be content to take his exception to the ruling of the court.

From the record before us we cannot and do not find that the verdict of the jury in the case at bar was due to any misconduct of counsel on either side. It must be remembered that the trial court has a wide discretion in ruling on forms of questions, examination of witnesses, etc., and the record does not show that this discretion was abused by the trial court in the hearing of this case below.

In 5 Jones on Evidence (2d Ed.), page 4561, Section 2332, the author says: "The result of the rule that allowance of refusal of leading questions is largely within the discretion of the trial court, is that error can rarely be predicated with success upon the decision of the trial court. In order to warrant reversal on such grounds, an abuse of the trial court's discretion to the prejudice of the appealing party must be shown. A case should not be reversed on account of the use of leading questions in eliciting testimony unless 'that method of examination was so extensively and artfully indulged in as to make the testimony not that of the witness, but a recital of the facts by the examining counsel.' "

An examination of the record discloses that both counsel for plaintiff and defendant below made statements to the jury that were improper and unwarranted, but, after a careful examination of the

whole of the record, we feel that a reviewing court is not warranted or authorized to reverse this case. As to the verdict being excessive and influenced by passion and prejudice, after a careful review of the facts, in connection with the authorities heretofore cited, we hold that they are such as to completely justify the verdict.

One of the strongest cases in Ohio, and a parallel with the case at bar, is the case of *Houran* v. *Whitney,* 20 C. C. (N. S.), 489, 24 C. D., 523, affirmed by the Supreme Court, *Whitney* v. *Houran,* 90 Ohio St., 390, 108 N. E., 1135. See, also, *Smith* v. *P., Ft. W. & C. Ry. Co.,* 23 Ohio St., 10.

In the present case, the evidence shows that Alta Lowery, plaintiff in the case below, was not only entitled to punitive damages, including reasonable fees of counsel, but that if the jury found and believed from all the evidence before them that the defendant's conduct was wilful, intentional, and wanton, that then plaintiff below was also entitled to compensatory damages for the humiliation, injury to feelings, and mental suffering which she sustained, resulting naturally and necessarily from the wrongful act.

The plaintiff below was in the hospital at the time the furniture was taken. The record shows that the defendant's manager knew she was there, and knew her condition and that she had undergone a serious operation. It was for the jury to gather and determine what, if any, was her humiliation, and mental anguish, when she discovered that the defendant's agent had entered into her home and taken her furniture. It was for the jury to determine what effect this had upon her in her weakened condition

and whether her suffering was greater than it would have been otherwise. The jury had a right to take these facts into consideration in returning their verdict.

Counsel for plaintiff in error makes the claim that the court erred in permitting plaintiff, Alta Lowery, and her husband, Howard G. Lowery, to testify that while she was in the hospital she learned or discovered from her husband and her son that defendant had broken into her house and that the furniture had been taken, and its effect upon her, on the ground that the admission of such testimony was in violation of the hearsay rule.

In 3 Jones on Evidence (2d Ed.), Section 1088, the author cites instances of exception to the hearsay rule, where a mental state or condition is in issue. At the end of the section, on page 2012, the author quotes as follows: "The rule is thoroughly well settled, that, when the intention, feelings, or other mental state of a certain person at a particular time, including his bodily feelings, is material to the issues under trial, evidence of such person's declarations at the time indicative of his then mental state, even though hearsay, is competent as within an exception to the hearsay rule."

In the case at bar, it was necessary and essential to show the humiliation and mental suffering which the plaintiff sustained because of the defendant company's wrongful act, and to do this it was necessary to show that she learned from some one that the defendant's agents had broken into her home and taken her furniture.

We believe this testimony was clearly admissible under the above exception to the hearsay rule.

Therefore it follows in this case that the judgment of the common pleas court will be, and hereby is, affirmed.

*Judgment affirmed.*

HOUCK and SHERICK, JJ., concur.