**Evelyn Holden, Plaintiff-Appellant, v. Kayser Roth Corp., Catalina Inc., and Peoples Store of Roseland, Inc., Defendants-Appellees.**

Gen. No. 52,037.

First District, Fourth Division.

February 21, 1968.

Sheldon S. Mells, of Chicago (Leonard M. Ring, of counsel), for appellant.

Vogel & Vogel, of Chicago (Robert C. Vogel, of counsel), for appellees.

MR. JUSTICE DRUCKER delivered the opinion of the court.

Plaintiff's complaint sought damages from defendants for negligence and breach of warranty in the manufacture and sale of a bathing suit which exposed to view her personal and private parts when it became wet resulting in her "humiliation, mortification and embarrassment . . . ." Plaintiff appeals from a directed verdict at the close of her evidence in favor of defendants Kayser Roth Corp. and Catalina Inc. and from a dismissal of the case.*

---

* The complaint was dismissed as to the Peoples Store of Roseland prior to trial.

* See Callaghan's Illinois Digest, same topic and section number.

240

The issues presented by this appeal are:

1. Was there a prima facie showing that plaintiff's personal and private parts were exposed to view; and
2. Is mental suffering, neither intentionally inflicted nor the product of a physical impact, compensable?

Plaintiff testified that she purchased the bathing suit in question at the Peoples Gately Store on February 4, 1960; that it was a Catalina bathing suit and that she wore it for the first and only time April 27 at the Pullman Park Pool on "Family Night." According to plaintiff's testimony she came to the pool with her daughter, her next door neighbor Mary Goshorn, and a friend, Mrs. Margaret Broccolino. There were 75 to 100 people at the pool at the time the incident took place. After she and her friends swam around for awhile they got out of the pool to use the diving board, whereupon her daughter told her that she could see through plaintiff's bathing suit. Plaintiff stated that she then looked down at the suit and could see her "personal and private parts." She then dove back in and her friends shielded her in the shallow end until the pool "more or less cleared out of people" whereupon she made a quick exit to the locker room, dressed and went home. She said she didn't know the names of all the people at the pool but they were her neighbors and she saw them often on the street and at the PTA and other community affairs and that she was embarrassed, upset, angry, nervous and was perspiring. One hour later she had a "beastly headache." The next day she was sluggish, depressed and embarrassed. She is still nervous and perspires and it was six months before her anger left. She has never gone back to the Pullman Park Pool. She said she was often "joshed" about the incident by her friends.

> Every time we are out in a group or gathering for a picnic, or something, the subject is always brought up. (They say), "Let's turn a hose on Evelyn," or, "Let's throw her in the water and see what kind of a bathing suit she has on." That is still happening.

Plaintiff stated that every time the subject is brought up she still becomes nervous and perspires. She sought, however, no medical attention following the incident nor did she miss any work from her job as a secretary. When cross-examined about what she saw when she looked down at her swimsuit, plaintiff said:

> Before I dove back into the pool, I glanced down quickly. I saw flesh colored skin through a white bathing suit *on my thigh* and *side at my hip*—I don't know whether I looked at my right, or left, side. I looked down and saw flesh color, through my suit, at this point. I did not look anyplace else. I dove back into the pool. [Emphasis supplied.]

Margaret Broccolino testified that when plaintiff got out of the pool to go to the diving board she was able to see plaintiff's personal and private parts, that plaintiff was upset and embarrassed, that people who know about the incident tease plaintiff and she becomes embarrassed and ashamed. However, when cross-examined about what she saw she stated:

> As to what I understand of the private parts of a person's body, I mean anything that would ordinarily be covered up. I understand what you mean when you refer to a woman's breast. I could see those through this suit. I did. This has been a great length of time—The portion that I saw of this lady's body through this suit was, generally, through the middle area of her body. I could not be absolutely

242

definite about that. I know we could see her skin through the suit. I do not recall the area exactly. I could not pinpoint the area, and I don't want to argue with you. You could ask me fifty questions, and I couldn't give you a better answer than I just have. I wouldn't be able to tell you, specifically, whether or not I could see a particular portion of this lady's anatomy through this suit.

Mary Goshorn testified that after plaintiff started to get out of the pool she noticed the suit had become transparent and that plaintiff became embarrassed. She said:

I could see through her bust area. I think I could see through her abdominal area, and, also through the buttocks area. I would say that her body, under the area of the bathing suit, was exposed so you could see it.

When cross-examined on this point, however, she said:

You could see through the suit, but I don't recall what parts I saw. As to whether I just have a general impression you could see some parts of her body through the suit, I know you could see through the suit.

She also testified that it was just a few seconds from the pool to the locker room, that there were around fifty people present but that she didn't know what any of them had seen.

Paul Stokesbury testified that he was a chemist and did physical testing of structural and nonstructural materials. He said that he tested the swimsuit and that it became transparent when wet and a band-aid placed on the thigh could be seen through it. Stokesbury also identified four black and white pictures of the swimsuit worn

243

by a model taken under his direction and submitted as exhibits. Three of the pictures were of the suit wet and one dry.

Plaintiff first contends that she made a prima facie showing that her "personal and private parts" had been exposed. Plaintiff testified that she was able to see her "personal and private parts" when she looked down at herself after emerging from the pool. However, on cross-examination she admitted to only having seen flesh color at her thigh and her hip and to having looked nowhere else. Her friends, Mrs. Broccolino and Mary Goshorn, after testifying on direct examination to their having seen plaintiff's private areas, admitted on cross-examination that they were not able to remember what they had seen. Plaintiff's expert Stokesbury stated that the suit was transparent but didn't testify as to the specific areas exposed. Most significantly, the pictures he had taken completely fail to support plaintiff's contention. Although the outline of a band-aid is faintly discernible on the model's thigh, the model's "personal and private parts" clearly are not. Finally, examination of the suit itself, which was introduced as one of plaintiff's exhibits, shows that it was lined with extra material in the bust area and in the crotch. Under these circumstances we believe plaintiff failed to prove that her "personal and private parts" were exposed and therefore the court properly directed a verdict in favor of defendants. (Pedrick v. Peoria & E. R. Co., 37 Ill2d 494, 229 NE2d 504.)

Plaintiff also asks us to rule that mental suffering, neither intentionally inflicted nor the product of a physical impact, is compensable. Her counsel argues ably and persuasively that the line of cases denying recovery for mental suffering in the absence of physical impact, of which Braun v. Craven, 175 Ill 401, 51 NE 657, is the leading case, has been implicitly overruled by Knierim v.

Izzo, 22 Ill2d 73, 174 NE2d 157. He points out that in Knierim, in establishing the compensability of intentionally inflicted mental suffering, the Illinois Supreme Court cast doubt on many of the principles on which Braun v. Craven and succeeding cases were built. Cases in other jurisdictions which have permitted recovery for negligently inflicted mental suffering without physical impact (Falzone v. Busch, 45 NJ 559, 214 A2d 12, and Savard v. Cody Chevrolet, Inc. (Vt), 234 A2d 565) have been presented to us. However, since plaintiff predicated her mental suffering on the exposure of her private parts, our conclusion that she failed to prove such exposure places beyond the proper scope of this opinion any decision on the compensability of the alleged resulting suffering.

The judgment of the Circuit Court is affirmed.

Affirmed.

McCORMICK, P. J. and ENGLISH, J., concur.