CHARLES W. JAMIESON, Plaintiff-Appellant, *v.* AMERICAN NATIONAL SAFE DEPOSIT COMPANY *et al.*, Defendants-Appellees.

(No. 54142;

First District—July 12, 1971.

*Rehearing denied September 9, 1971.*

648

Falkenberg & Falkenberg, of Chicago, for appellant.

Alan H. Swanson and John M. O'Connor, Jr., both of Kirkland, Ellis, Hodson, Chaffetz & Masters, of Chicago, for appellees.

Mr. PRESIDING JUSTICE BURKE delivered the opinion of the court:

An amended complaint was filed by Charles W. Jamieson alleging the conversion by the corporate and individual defendants of a number of Federal Reserve Notes deposited by Jamieson in a safe deposit box rented by him from defendant American National Safe Deposit Company.

On defendants' motion to strike and dismiss the amended complaint, the trial court entered an order dismissing out of the case the individual defendants, Sylvester Goldschmidt and Charles Garry, and also striking from the amended complaint Paragraphs 18, 19 and 20 which related to, respectively, the severe emotional distress allegedly suffered by Jamieson as a result of the occurrence; the alleged maliciousness of the defendants in their actions; and the aggravation of the incident by the alleged violation of Jamieson's federal constitutional right to freedom from unlawful search and seizure. The order of the trial court also struck that part of the *ad damnum* clause of the amended complaint which requested a special finding that malice was the gist of the action, and that a body execution issue to aid Jamieson in obtaining satisfaction of the judgment sought to be entered.

The order of the trial court specifically recited that there was no just cause to delay enforcement or appeal of the order, and Jamieson prosecuted this appeal.

Charles W. Jamieson (hereinafter "plaintiff") filed his original verified complaint on September 3, 1968, and on September 16, 1968, on prior

motion of defendants, the trial court struck and dismissed the original complaint, with leave to plaintiff to file an amended complaint.

The instant amended complaint was filed on March 11, 1969, alleging that the American National Safe Deposit Company (hereinafter "Safe Deposit Company") was engaged in the business of leasing safe deposit boxes on its vault premises at 33 North La Salle Street in Chicago, and that defendant American National Bank and Trust Company (Bank) was engaged in the banking business at the same address. It further alleged that Sylvester Goldschmidt (Goldschmidt) was an executive officer of the Safe Deposit Company and that Charles Garry (Garry) was the auditor of the Bank. It also alleged that plaintiff is an attorney admitted to practice in the State of Illinois.

The amended complaint further alleged that plaintiff was a lessee of safe deposit box number b-43 from the Safe Deposit Company, that plaintiff's rent for the box was paid, that the lease to the box was in the possession of the Safe Deposit Company, and that plaintiff had one key to the box. The amended complaint alleged that plaintiff went through a customary procedure whenever he withdrew his safe deposit box from the space provided for it in the vault on the Safe Deposit Company's premises: he withdrew the box from the vault, opened it in a private room which had a door that locked when closed, and returned the box to the vault space provided. It was alleged that in the safe deposit box was kept cash money and other valuable papers, such as clients' papers, collector's items, and the like.

The amended complaint alleged that on or about June 7, 1966, plaintiff withdrew the box from the vault space provided, opened the box and removed a number of accumulated Federal Reserve Notes of various denominations, together with a white sheet of paper on which he had noted additions made to the accumulated notes, all of which were made into a bundle and held together with a rubber band. It was alleged that plaintiff at that time added more notes to the bundle, bringing the total value of the notes contained therein to $1600; that he made a notation to the effect on the sheet of paper attached to the bundle; that he replaced the rubber band around the bundle and the sheet of paper; that he replaced the bundle into and shut the box; that he returned the box to the vault space provided; and that he observed the vault attendant lock the door to the vault space provided for the box with plaintiff's key and a master key. It was alleged that plaintiff then obtained his key from the attendant and exited the premises.

The amended complaint alleged that on July 5, 1966, plaintiff returned to the Safe Deposit Company and, in accordance with customary procedure, withdrew the safe deposit box from the vault space provided

and took it to the private room where he opened the box. It was alleged that plaintiff observed that the Federal Reserve Notes and the sheet of paper were missing from the box, and that he immediately closed the lid to the box and reported the matter to Goldschmidt. It was alleged that Goldschmidt thereupon asked plaintiff to follow him, that Goldschmidt led plaintiff to the premises occupied by the Bank, and that Goldschmidt introduced plaintiff to Garry and left the room. It was alleged that plaintiff informed Garry that the Federal Reserve Notes were missing from his safe deposit box, and that Garry opened a drawer to his desk and removed and handed to plaintiff the bundle of Federal Reserve Notes and a sheet of white paper with plaintiff's notations, all held together with a rubber band.

Paragraph 14 of the amended complaint alleged that plaintiff counted the Federal Reserve Notes in the bundle handed to him by Garry and found that they totaled $1460, and that he advised Garry that the bundle contained $140 less than originally contained and pointed out to Garry the $1600 notation on the paper.

Paragraph 15 of the amended complaint alleged that Garry thereupon requested that plaintiff sign a receipt showing the amount of $1460 from the Safe Deposit Company, that plaintiff signed the receipt but endorsed upon it the words: "This is not and is not construed as a release. Jamieson."; that Garry refused to accept the receipt with the said endorsement and also refused to deliver the bundle of notes to plaintiff without the original receipt, and that the plaintiff left the premises without the notes.

Paragraph 16 of the amended complaint alleged that a few days later plaintiff returned to the Safe Deposit Company and served a formal demand upon the Company for $1600 by handing the demand to Goldschmidt and asking him to sign for it, that Goldschmidt accepted the demand but refused to acknowledge receipt thereof, that the Safe Deposit Company has not complied with the demand made upon it, and that plaintiff has since closed out his safe deposit box and returned the key to the Company.

Paragraph 17 of the amended complaint then alleged that based upon the foregoing facts, the plaintiff:

"* * * is convinced and alleges that the defendant American National Safe Deposit Company and the defendant American National Bank and Trust Company and the defendant Sylvester Goldschmidt and the defendant Charles Garry wilfully conspired to and by the American National Safe Deposit Company did take $1,600.00 out of his box, and out of the safe, and off the premises occupied by the American National Safe Deposit Company, and

unto the premises occupied by the defendant American National Bank and Trust Company, and into the possession of the defendant American National Bank and Trust Company and the defendant Charles Garry, and wilfully conspired to and by the defendant American National Bank and Trust Company and the defendant Charles Garry did detain and convert to their own use said $1,600.00, to plaintiff [sic] damage in the sum of $1,600.00." As noted above, Paragraphs 18, 19 and 20 alleged and claimed damages for severe emotional distress, malice, and violation of plaintiff's constitutional rights. An order was entered by the trial court allowing defendants' motion to strike and dismiss the amended complaint as to the individual defendants and as to Paragraphs 18, 19, and 20, and certain portions of the *ad damnum* clause of the amended complaint, from which order the plaintiff prosecutes this appeal.

We have no disagreement with the general propositions of law cited by plaintiff, that an individual who acts tortiously cannot escape liability on the ground that he was acting on behalf of a corporation, and that a motion to strike admits all facts well pleaded. (See *Landfield Finance Co. v. Regal Box Co.*, 345 Ill.App. 611; *Doner v. Phoenix Land Bank*, 381 Ill. 106.) Neither of those propositions of law, however, has any application to the facts, and the reasonable inferences drawn therefrom, alleged in the amended complaint, adverse to the order entered by the trial court pursuant to the defendants' motion to strike and dismiss the amended complaint.

Plaintiff contends that he had pleaded as far as he is required to plead in his amended complaint, because the "reasonable inferences" from the facts as pleaded therein lead to the ultimate conclusion of the existence of a conspiracy between the defendants to steal and convert his funds to their own use; he argues that defendants must now plead, since the answer to the question of what actually happened concerning the bundle of Federal Reserve Notes is within their own peculiar knowledge.

■■■ While we agree that inferences may be drawn from facts well pleaded, those inferences must be reasonable inferences and not mere conjecture and speculation. An allegation of a conspiracy does not of itself constitute an allegation of an actionable wrong upon which liability for damages may be predicated. On the contrary, it is the wrongful act sought to be accomplished by the alleged conspiracy which may result in liability. (*Montgomery Ward & Co. v. United Retail, Wholesale & Department Store Employees*, 400 Ill. 38; *Skolnick v. Nudelman*, 71 Ill.App.2d 424, 428.) An actionable wrong cannot be made out by the vituperous and "profuse interpolation of adjectives characterizing the act to be done" as wrongfully done. (*Skolnick v. Nudelman*, 71 Ill.App.2d

424, 428.) The pleading of conclusions alone will not suffice for the factual allegations necessary to support a cause of action. *Sulinski v. Humboldt & Wabansia Bldg. Corp.,* 315 Ill.App. 392, 402.

The allegations contained in the instant amended complaint in no way lead to the conclusion that Goldschmidt and Garry were involved in a conspiracy to steal plaintiff's funds or to convert them to their own use. Plaintiff engages in conjecture and surmise when he states that the allegations, and the "reasonable inferences" drawn therefrom, lead to such conclusion: his first "reasonable inference" drawn from the allegations of the amended complaint, which is the first in a chain of thirty such inferences, is that "the money was stolen." From that point plaintiff draws such further "reasonable inferences" that an "unauthorized person used two keys to enter the box * * * that the two keys were the original keys * * * that the entrance [to the box] was not observed by innocent persons * * * that this theft was an inside job * * * that the missing $140 has been spent by the person having possession of the balance * * * that the auditor of the bank got the money from the employee of the safe deposit company that stole the money * * * that if the individual defendants did not [steal the money] they are covering up for the person who did * * * that [defendants] construed the receipt to be a release in the absence of the added provision * * * that [defendants] construed [plaintiff's] action as being a threat of litigation * * * that [defendants] detained the money to induce [plaintiff] to refrain from litigation * * *" and so on. The conjectural nature of these "reasonable inferences" is self-evident.

■■ Further, the "reasonable inferences" raised by plaintiff, that the individual defendants were engaged in a conspiracy to steal and convert his funds, when considered in light of his contention that he has pleaded as far as he is required and that defendants must now explain how they came upon the funds, flies in the face of plaintiff's sworn allegation contained in his original complaint, that he was told by Garry that an attorney named Edward Cooper informed Garry that a client of Cooper found the bundle of notes on the floor of the safe deposit vault below box number b-43 on the day after plaintiff allegedly entered the box in June 1966 and that the client advised Cooper of the find. Such allegation, sworn to by plaintiff, is far afield of the "reasonable inference" that the individual defendants stole the funds and intended to convert them to their own use. The alleged intention to convert the funds to their own use is further belied by the allegation that the bundle was offered to plaintiff immediately after its alleged loss was reported to Goldschmidt.

Plaintiff also contends that the individual defendants are "wrongfully

withholding" his funds. However, the crux of the matter revolves around the demand by plaintiff for the return of $1600 in Federal Reserve Notes and the reluctance of the individual defendants to part with the $1460 in Federal Reserve Notes in the face of such demand; there is a controversy as to the amount. The case of *Schaefer v. Washington Safety Deposit Co.*, 281 Ill. 43, cited by plaintiff, involved an action by the lessee of a safe deposit box against the lessor company for funds missing from the box after its location and plate had been changed; individual employees or officers of the company were not involved. Here, on the other hand, the facts alleged in the amended complaint in no way reveal that the individual defendants wrongfully took or are withholding the funds of the plaintiff, or that they are in any way accountable for the alleged loss of the $140.

No cause of action has been alleged against the individual defendants, Sylvester Goldschmidt and Charles Garry, in the amended complaint, and the trial court correctly dismissed them out of the case.

Plaintiff also contends that the trial court erred in striking Paragraph 18 of the amended complaint, relating to the severe emotional distress allegedly suffered by plaintiff from the conversion of his funds. We disagree.

The Supreme Court in the case of *Knierim v. Izzo*, 22 Ill.2d 73, set guidelines for the recovery of damages in an action based upon severe emotional distress. In the *Izzo* case, a widow brought an action for damages for such injuries after the defendant had communicated to her that he intended to kill her husband and later in fact did kill him. The Supreme Court held that her complaint stated a good cause of action, quoting with approval from the case of *Slocum v. Food Fair Stores of Florida, Inc.*, 100 So.2d 396, at page 86 of the opinion:

> "* * * The unwarranted intrusion must be calculated to cause 'severe emotional distress' to a person of ordinary sensibilities, in the absence of special knowledge or notice. There is no inclination to include all instances of mere vulgarities, obviously intended as meaningless abusive expressions."

The Supreme Court warned, however, that indiscriminate allowance of actions for mental anguish would encourage neurotic overreactions to trivial hurts, and the law should aim to toughen the psyche of the citizen rather than pamper it. The Court concluded that each case must be governed by its own peculiar facts, in light of the parties' intention, knowledge, and the like.

In *Swanson v. Swanson*, 121 Ill.App.2d 182, plaintiff brought an action against his brother for severe mental distress when the latter failed to notify the former of the death and burial of their mother, after an ap-

parent disagreement between the brothers concerning the boarding of the mother. The Appellate Court held that the plaintiff failed to prove such "severe emotional disturbance" as required by the *Izzo* case, the Court specifically noting that plaintiff did not as much as consult with a doctor concerning his alleged emotional condition resulting from the incident.

In *March v. Cacioppo*, 37 Ill.App.2d 235, the trial court allowed defendant's motion to strike a portion of the complaint relating to damages for severe emotional distress allegedly caused by defendants' garnishment of plaintiffs' bank account based upon a void or exorbitant judgment. The Appellate Court affirmed the striking of that portion of the complaint, stating that the distress which was alleged therein was not such as would be suffered by a "person of ordinary sensitivities" as contemplated by the *Izzo* case.

To the same effect see *Holden v. Kayser Roth Corp.*, 92 Ill.App.2d 240. ■■ The amended complaint contains no allegation from which could be inferred that plaintiff suffered the severe emotional distress such as is contemplated by the *Izzo* case. On the contrary, the most that can be inferred from plaintiff's allegations is that plaintiff and defendants had a disagreement as to whether plaintiff should receive $1600 or $1460. The allegation that plaintiff suffered such injuries, standing alone, is merely a conclusion. The trial court properly struck Paragraph 18 of the amended complaint.

The cases cited by plaintiff in support of his position that damages for emotional distress are recoverable where interference with personal property is concerned are inapposite on their facts to the situation in the case at bar. They involve evidence of severe emotional distress far in excess of that which is alleged in the amended complaint here. See *Murray v. Mace*, 41 Neb. 60, 59 N.W. 387; *M. J. Rose Co. v. Lowery*, 33 Ohio App. 488, 169 N.E. 716.

Plaintiff also contends that the trial court erred in striking Paragraph 19 of the amended complaint, which alleged malice as the gist of this action. We again disagree.

■■ Nothing in the amended complaint indicates that the defendants acted with malice in connection with the plaintiff's funds. On the contrary, plaintiff alleges that immediately upon his notification to Goldschmidt of the loss of the funds, Goldschmidt took him to Garry's office where Garry offered plaintiff the bundle of notes. Malice certainly cannot be implied from those actions. Nor can malice be implied from Garry's refusal to accept the qualified receipt from plaintiff: the allegations of the amended complaint reveal that there exists a genuine dispute over the $140. No facts are alleged from which it could be concluded that the

actions of any of the defendants were wanton, malicious, oppressive, or tended in any matter to aggravate otherwise normal circumstances, such as would be necessary to support a finding of punitive damages. *Herman v. Prudence Mutual Cas. Co.*, 41 Ill.2d 468.

The trial court was also correct in striking Paragraph 20 of the amended complaint, relating to the alleged violation of plaintiff's constitutional right to freedom from unlawful search and seizure, and in further striking that portion of the *ad damnum* clause of the amended complaint relating to the finding of special damages and for the issuance of a body execution.

For these reasons the order dismissing defendants Sylvester Goldschmidt and Charles Garry out of the case, and also striking Paragraphs 18, 19 and 20, and portions of the *ad damnum* clause of the amended complaint, is affirmed.

Order affirmed.

LYONS and GOLDBERG, JJ., concur.