PUBLIC FINANCE CORPORATION, Plaintiff and Counterdefendant-Appellee, *v.* LUELLA DAVIS, Defendant and Counterplaintiff-Appellant.

Fifth District No. 75-423

Opinion filed February 23, 1976.

Lois J. Wood, of Land of Lincoln Legal Assistance Foundation, Inc., of East St. Louis, for appellant.

John F. O'Connell, of O'Connell & Waller, of Belleville, for appellee.

Mr. JUSTICE EBERSPACHER delivered the opinion of the court:

This is an appeal by the defendant, Luella Davis, from an order of the circuit court of St. Clair County dismissing her counterclaim, and motion for leave to file an amended counterclaim, against the plaintiff, Public Finance Corporation, in which she claimed damages for severe emotional distress intentionally inflicted upon her by plaintiff's manner of seeking to collect two delinquent accounts.

The sole issue before this court is whether either the defendant's counterclaim or her amended counterclaim, which was attached to her motion to file an amended counterclaim, stated a cause of action for intentional infliction of emotional distress. The defendant filed each of these counterclaims in response to a complaint filed by the plaintiff. The plaintiff's complaint prayed for judgment against the defendant in the

amount of $543.07 for amounts due and owing the plaintiff under a promissory note executed by the defendant and secured by consumer goods of all kinds, including household goods, owned by the defendant.

The defendant attached her original counterclaim to her answer. Therein she alleged that:

"(2) On or about February 27, 1973, she entered into a contract with Sav-Mart Furniture, and said contract was subsequently purchased by Public Finance Corporation.

(3) On or about January 25, 1974, she executed a promissory note to Public Finance Corporation in the amount of $784.42.

(4) On or about September 1, 1974, Luella Davis informed employees or agents of Public Finance Corporation that she was financially unable to continue regular payments on those two accounts.

(5) On or after September 1, 1974, employees or agents of Public Finance Corporation, in order to collect the two accounts, harassed Luella Davis by frequent and repeated phone calls and visits to her home.

(6) On or after September 1, 1974, agents or employees of Public Finance Corporation communicated private and/or untrue facts about Luella Davis to her acquaintances.

(7) On or after September 1, 1974, agents or employees of Public Finance Corporation entered Luella Davis' home under false pretenses to investigate the number and kind of household goods owned by her.

(8) On or after October 1, 1974, Luella Davis informed employees or agents of Public Finance Corporation that she was ill.

(9) On or after October 1, 1974, agents or employees of Public Finance Corporation attempted to collect the two accounts by contacting Luella Davis at the hospital where her daughter was hospitalized and seriously ill.

(10) As a result of the above actions by employees and agents of Public Finance Corporation, Luella Davis suffered physical and mental anguish and severe emotional distress.

(11) Public Finance Corporation, through its employees and agents, intentionally inflicted such physical and mental anguish and severe emotional distress on Luella Davis;

(12) Public Finance Corporation, through its employees and agents recklessly disregarded the possibility of causing physical and mental anguish and severe emotional distress to Luella Davis.

(13) Luella Davis has thereby been damaged in the amount of $1500."

The plaintiff filed a motion to dismiss the counterclaim on the ground that it failed "to state a cause of action upon which relief can be granted." The plaintiff further moved to strike paragraphs, 4, 5, 6, 7, 8, and 9 "as being conclusions of the pleader which no way advises this counterdefendant with sufficient facts to supply an answer." The plaintiff's motion to dismiss the counterclaim was allowed.

The defendant then filed a motion for leave to file an amended counterclaim. The amended counterclaim, attached to such motion, alleged in pertinent part that:

"7. On or about September 1, 1974, and on frequent occasions thereafter, Luella Davis informed employees or agents of Public Finance Corporation that she was no longer employed, that her sole income was from Public Aid, and that she did not have enough income to make regular payments on her accounts.

8. From on or about September 1, 1974 through on or about April 4, 1975, Public Finance Corporation, through its agents or employees, engaged in an outrageous course of conduct, as set forth in Paragraphs 9 through 20 of this Count, with the intent of causing severe emotional distress to Luella Davis, or in reckless disregard of the possibility of causing severe emotional distress to her.

9. From on or about September 1, 1974 through on or about April 4, 1975, employees or agents of Public Finance Corporation, in order to collect on said accounts, harassed Luella Davis by calling her several times weekly and frequently more than once daily.

10. From on or about September 1, 1974 through on or about April 4, 1975, employees or agents of Public Finance Corporation, in order to collect on said accounts, harassed Luella Davis by going to her home one or more times per week.

11. In October 1974, Luella Davis' daughter was confined to a hospital with a brain tumor.

12. On or about October 15, 1974, an agent or employee of Public Finance Corporation, in order to collect on said accounts, called Luella Davis at the hospital where she awaited word on her daughter's condition.

13. On the day alleged in Paragraph 12, Luella Davis informed the agent or employee of Public Finance Corporation of the severity of her daughter's condition and informed the agent or employee that she was herself sick and had nervous problems.

14. On the day alleged in Paragraph 12, Luella Davis became extremely upset and distressed by the agent or employee's per-

sistence and asked that Public Finance Corporation refrain from further calls to her at the hospital.

15. On the day alleged in Paragraph 12, the agent or employee of Public Finance Corporation, with notice of Luella Davis' mental, physical and financial condition, made an additional call to her at the waiting room in the hospital.

16. On or about November 10, 1974, an employee or agent of Public Finance Corporation, after being informed by Luella Davis that she had no funds in her checking account, induced her to write a check to Public Finance Corporation to demonstrate 'good faith' and promised that said check would not be processed.

17. In November 1974, an employee or agent of Public Finance Corporation, in order to collect on said accounts by intimidating and harassing Luella Davis, phoned an acquaintance of Luella Davis and informed her that Luella Davis was writing bad checks to Public Finance Corporation.

18. In late October or November 1974, an employee or agent of Public Finance Corporation called at Luella Davis' home and, after being told that she had no money with which to make a payment, was given permission to use her phone.

19. On the day alleged in Paragraph 18, the employee or agent of Public Finance Corporation, in order to threaten and coerce Luella Davis into making payments on said accounts, used her phone in her presence to describe and report to Public Finance Corporation the household goods owned by her.

20. On the day alleged in Paragraph 18, despite demands that he leave the home, the employee or agent of Public Finance failed or refused to leave the home until Luella Davis' son entered the room.

21. On the day alleged in Paragraph 18, after the employee or agent of Public Finance Corporation had left her home, and as a proximate result of his conduct, Luella Davis became ill and called a doctor concerning her condition.

22. As a result of the above described actions by Public Finance Corporation through its agents and/or employees, Luella Davis suffered physical and mental anguish and severe emotional distress.

23. Luella Davis has thereby been injured in the amount of $1,500.00."

In a second count, the defendant incorporated by reference paragraphs 1 through 21 of Count I and further alleged that:

"22. During the period from September 1, 1974, through April 4, 1975, Luella Davis suffered from hypertension and a nervous condition.

23. Luella Davis was particularly susceptible to emotional distress as a result of her physical and mental condition.

24. In October 1974, and on frequent occasions thereafter, Luella Davis informed employees or agents of Public Finance Corporation of her illness and nervous conditions.

25. In January or February 1975, Luella Davis informed an employee or agent of Public Finance Corporation that she was pregnant.

26. Public Finance Corporation had notice and knowledge of Luella Davis' particular susceptibility to emotional distress.

27. As a result of the actions of Public Finance Corporation, through its agents and employees, as set forth in Paragraph 9 through 20 of Count I, Luella Davis suffered physical and mental anguish and severe emotional distress.

28. Luella Davis has thereby been injured in the amount of $1,500.00."

After hearing arguments on defendant's motion for leave to file an amended counterclaim the trial court denied the motion and found no just reason to delay enforcement or appeal. This appeal followed.

At the outset we note that the defendant has cited no Illinois authority which has held a party liable for intentional infliction of severe emotional distress under a factual basis similar to the one presented in the instant case. We also note that the plaintiff relies principally upon the Restatement (Second) of Torts §46 (1965) and the commentary appended thereto. After reviewing numerous cases on the subject we find that the Restatement's expression of the doctrine of the tort of intentional infliction of severe emotional distress, as set forth in section 46, accurately reflects the current stage of development of such tort. We, therefore, have deemed it appropriate to draw extensively upon the Restatement's definition of this tort and the committee's comments thereto.

■■ The Restatement defines outrageous conduct causing severe emotional distress in the following manner:

"(1) One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to 'another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." (Restatement (Second) of Torts §46(1) (1965).)

The gravamen of the tort is "extreme and outrageous conduct." As set forth in Comment d, "Liability has been found only where the conduct

has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." (Restatement (Second) of Torts §46, Comment *d* (1965).) While Comment *f* notes that "[t]he extreme and outrageous character of the conduct may arise from the actor's knowledge that the other is peculiarly susceptible to emotional distress, by reason of some physical or mental condition or peculiarity," it continues by noting that, "[i]t must be emphasized again, however, that *major outrage is essential to the tort*; and the mere fact that the actor knows that the other will regard the conduct as insulting, or will have his feelings hurt, is not enough." (*Emphasis* added.) (Restatement (Second) of Torts §46, Comment *f* (1965).) Comment *g* reiterates that "[t]he actor is never liable, for example, where he has done no more than to insist upon his legal rights in a permissible way, even though he is well aware that such insistence is certain to cause emotional distress." (Restatement (Second) of Torts §46, Comment *g* (1965).) Finally, Comment *h* accurately reflects the role of the trial court in determining the sufficiency of the pleadings: "It is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery, or whether it is necessarily so." Restatement (Second) of Torts §46, Comment *h* (1965).

■■ Applying the foregoing principles to the pleadings filed by the defendant, we find that the defendant failed to state a cause of action under the theory of intentional infliction of severe emotional distress upon which her pleadings were framed. While we find that the defendant's pleadings were sufficient to allege the defendant's particular susceptibility and the plaintiff's notice thereof, we are unable to find within such pleadings any allegations of fact which may reasonably be regarded as a "major outrage," *i.e.*, "so extreme or outrageous as to permit recovery." Albeit two of the allegations contained in defendant's amended counterclaim, the plaintiff's second call while the defendant waited at the hospital (paragraphs 12—15) and plaintiff's disclosure of the defendant's having written a bad check (paragraph 17), approach the requisite degree of extreme and outrageous conduct necessary for recovery, *and should not be condoned*, we cannot say that they are "so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Being unable to reach such a conclusion, we deem it inappropriate for an intermediate court of review to relax the rigid requirements established for recovery under the theory of intentional infliction of severe emotional distress, as consistently applied by the courts of this

State. (See *Knierim v. Izzo,* 22 Ill. 2d 73, 174 N.E.2d 157; *Johnson v. Board of Junior College District No. 508,* 31 Ill. App. 3d 270, 334 N.E. 2d 442, 446; *Jamieson v. American National Safe Deposit Co.,* 133 Ill. App. 2d 647, 273 N.E.2d 741, *cert. denied,* 405 U.S. 990, 31 L. Ed. 2d 457, 92 S. Ct. 1256; *Swanson v. Swanson,* 121 Ill. App. 2d 182, 247 N.E. 2d 194; *Holden v. Kayser,* 92 Ill. App. 2d 240, 235 N.E.2d 426; *March v. Cacioppo,* 37 Ill. App. 2d 235, 185 N.E.2d 397; *Eick v. Perk Dog Food Co.,* 347 Ill. App. 293, 106 N.E.2d 742. See also *Eckenrode v. Life of America Insurance Co.* (7th Cir. 1972), 470 F.2d 1. But see *Torts— Intentional Infliction of Mental Suffering: A New Tort in Illinois,* 11 De Paul L. Rev. 151 (1961).) For cases from other jurisdictions, see Restatement (Second) of Torts, Appendix, §46 (1966); Restatement in the Courts (Torts) §46 (1965 Supp., 1967 Supp., 1968-69 Supp., 1970-71 Supp., 1972-73 Supp., and 1974 Supp.), and Prosser, Law of Torts §12, at 49-62 (4th ed. 1971). *Cf.,* Annot., 46 A.L.R.2d 772 (1972), "Recovery for Emotional Distress or its Physical Consequences Caused by Attempts to Collect Debt Owed by Third Party."

Accordingly, the orders entered by the circuit court of St. Clair County dismissing defendant's counterclaim and denying defendant's motion for leave to file an amended counterclaim are affirmed.

Affirmed.

G. J. MORAN and JONES, JJ., concur.