368 A.2d 770

Geraldine JONES, Trustee Ad Litem and Administratrix, and Carrie Taylor, Appellants,

v.

NISSENBAUM, RUDOLPH & SEIDNER, et al., Appellees.

Superior Court of Pennsylvania.

Argued Sept. 20, 1976.

Decided Dec. 15, 1976.

H. David Kraut, Philadelphia, with him Ira Silverstein, Philadelphia, for appellants.

Frank H. Griffin, III, Philadelphia, for appellees.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

JACOBS, Judge:

This is an appeal from the sustaining of preliminary objections to the appellants' complaint in trespass and wrongful death against the above-named appellees alleging a cause of action for intentional infliction of mental distress. The plaintiffs were given leave to amend their complaint but failed to do so. This appeal followed.

Normally an order merely sustaining preliminary objections in the nature of a demurrer, without taking further action such as dismissing the complaint is not a final appealable order. *Cherry v. Empire Mut. Ins. Co.*, 417 Pa. 7, 208 A.2d 470 (1965); *International Union of United Brewery Workers v. Watkins*, 417 Pa. 120, 207 A.2d 776 (1965); *Sullivan v. Philadelphia*, 378 Pa. 648, 107 A.2d 854 (1954). However, where a party is so restricted in his ability to amend his complaint that he is virtually put out of court, such a ruling is not interlocutory and is appealable. *Hudock v. Donegal Mutual Insurance Co.*, 438 Pa. 272, 264 A.2d 668 (1970); *Unger v. Hampton Township*, 437 Pa. 399, 263 A.2d 385 (1970); *Griffith v. United Air Lines, Inc.*, 416 Pa. 1, 203

A.2d 796 (1964); *International Union of United Brewery Workers v. Watkins*, supra. In the instant case, the lower court ruled that the factual allegations raised in appellant's complaint did not constitute the outrageous conduct required for the tort of intentional infliction of mental distress. The appellants were, therefore, put out of court since the record reveals no new facts that could be alleged in order to comply with the lower court's requirement of a more specific pleading. We therefore are empowered to decide the case. And it is equally true that the only facts before this court are the averments of the complaint, and for present purposes the demurrer admits every well-pleaded material fact set forth in the pleading to which it is addressed and the inferences reasonably deducible therefrom but not conclusions of law. *Commonwealth by Creamer v. Monumental Properties, Inc.*, 459 Pa. 450, 329 A.2d 812 (1974); *Buchanan v. Brentwood Federal Sav. & Loan Ass'n*, 457 Pa. 135, 320 A.2d 117 (1974); *Hoffman v. Misericordia Hospital of Philadelphia*, 439 Pa. 501, 267 A.2d 867 (1970); *Papieves v. Lawrence*, 437 Pa. 373, 263 A.2d 118 (1970).

Turning to appellants' complaint it is apparent that it refers to two unrelated credit transactions. The first transaction between Johnnie Mae Harvey and Allied Consumer Discount Company (hereinafter called ALLIED) concerned the financing of an automobile on or about March, 1969. Sometime after Allied made the loan Mr. Harvey became disabled and lost his job. The car was then repossessed, judgment was confessed and execution proceedings were instituted on the basis of the confessed judgment. These proceedings were abandoned due to the United States District Court's decision in *Swarb v. Lennox*, 314 F.Supp. 1091 (E.D.Pa.1970), *aff'd*, 405 U.S. 191, 92 S.Ct. 767, 31 L.Ed.2d 138 (1972).[1] On

1. The *Swarb* decision, decided on due process grounds, precluded execution on confessed judgments if no hearing on the merits is held and if the judgment debtor's income is under ten thousand dollars a year.

August 2, 1974, appellees Nissenbaum, Rudolph & Seidner, through their law clerk Gary A. Rochestie sent a letter on behalf of their client Allied to the Harveys which stated that the Harveys' house was to be sold at a September 9, 1974 sheriff's sale and that they should contact their office in order to stay the sale.[2] The appellants' complaint also alleged that sometime in the summer of 1974 and unidentified agent of Allied's came to the Harvey's house and in the presence of one of the Harveys' neighbors told him that their house was to be sold and that "they would have 30 days in order to get their junk out." The Harveys then visited the law firm of Nissenbaum, Rudolph & Seidner, where they were again informed that their house was to be sold. It is alleged that this course of conduct by the appellees was the proximate cause of the subsequent deaths of the Harveys, in that the severe emotional distress caused them to suffer a stroke and heart failure.

The second transaction involves appellant Carrie Taylor who co-signed a note given to Allied by her son for

2. Appellees assert that the letter sent to each of the appellants was merely an attempt to comply with the then applicable Philadelphia Local Rules of Procedure. The letter, below the firm's letterhead, read:

Dear Daniel and John Harvey:

You are hereby notified and advised that judgment has been entered against you and each of you in the Court of Common Pleas of Philadelphia County, March Term, 69 No. 7946.

Arrangements are being made to sell your property 1003 West Arizona Street at the sheriff sale in Room 296, City Hall on Monday, September 9, 1974, at 2:00 p. m. because of non-payment of the above debt. A schedule of distribution of the money proceeds of this will be filed and posted by the sheriff as per Rule 3129c.

No further notice will be sent to you in this matter, and in order to stop this sheriff sale, contact the writer of this letter at once. The telephone number is PE–5–5857.

Yours truly,
NISSENBAUM, RUDOLPH & SEIDNER
Attorney's-at-law
By: _____
Gary A. Rochestie
Authorized Representative
PE–5–5857

the purchase of an automobile. Some time later Allied confessed judgment and on April 4, 1969 the car was stolen. It was later recovered and Allied collected $277.00 for damages under the insurance policy. Carrie Taylor made the payments on the loan after her son stopped doing so and continued to do so for a few months after Allied repossessed the automobile. She was sent a letter by the law firm identical to that sent the Harveys [3] and now alleges that this action of the appellees make out an action for intentional infliction of mental distress.

Any inquiry into this tort must begin with a reference to the Restatement (Second) of Torts § 46 (1965) which provides *inter alia:*

"(1) One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm."

Our Supreme Court in *Forster v. Manchester*, 410 Pa. 192, 189 A.2d 147 (1963), recognized the tort of intentional infliction of mental distress as stated in section 46 of the revised first Restatement of Torts and in *Papieves v. Lawrence*, 437 Pa. 373, 263 A.2d 118 (1970) the court indicated that when presented with the proper case it would adopt the formulation of Section 46 of the Restatement (Second) of Torts. The paucity of Pennsylvania cases in this area reveals that the scope of this tort has yet to be defined in the case law of our state.

"The law has only recently recognized that the freedom from mental distress directly caused by wanton or outrageous conduct is entitled to legal protection independent of any other cause of action, and recent years have seen many legal developments in this regard." 437 Pa. at 378, 263 A.2d at 121.

---

**3.** Appellant Taylor was also sent a second letter which simply requested that she contact the firm's office immediately if she wished to stay the sale of her property.

*See also* Magruder, "Mental and Emotional Disturbance in the Law of Torts," 49 Harvard Law Review 1033 (1936). The comments to Section 46 provide a helpful guide in enumerating the elements of this tort. In Comment d to the section it is stated:

> "Liability has been found only where the conduct has been *so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.* Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous." (Emphasis added.)

It is apparent that the gravamen of this tort is that the conduct complained of must be of an extreme or outrageous type. *See Public Finance Corp. v. Davis,* 36 Ill. App.3d 99, 343 N.E.2d 226 (1976). Viewed in relation to the above standards it is clear that the conduct complained of in this case is not so extreme and outrageous as to support an action for intentional infliction of mental distress.[4] The existence of the debtor-creditor relationship will not in and of itself give rise to a cause of action. It is still necessary to show an extreme and outrageous abuse of the collection procedure pursued by the collectors. Restatement (Second) of Torts § 46, Comment e (1965). The letters sent by the appellees to the appellants were in no way beyond the bounds of decency. They merely stated that Allied intended to pursue its remedies for default on the notes given by the Harveys and Carrie Taylor. The language used was in no way capable of or intended to produce any extraordinary mental distress. And the fact that an unidentified representative of Allied told the Harveys in the presence of

4. It will not be necessary for us to analyze the conduct of each appellee separately since assuming arguendo that each appellee was responsible for every act alleged by the appellants in their complaint, a cause of action would still not be made out.

one of their neighbors that their house was to be sold, and that they had 30 days in which to get their junk out, although insulting and embarrassing, was not extreme or outrageous within the context of Section 46. Plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind. Restatement (Second) of Torts § 46, Comment d (1965). Nor can each of the appellee's conduct considered as a whole be characterized as within the type of the extreme dunning practices illustrated in cases in which other courts have found collecting creditors liable. *See George v. Jordan Marsh Co.,* 359 Mass. 244, 268 N. E.2d 915 (1971); *LaSalle Extension University v. Fogarty,* 126 Neb. 457, 253 N.W. 424 (1934); *Barnett v. Collection Service Co.,* 214 Iowa 1303, 242 N.W. 25 (1932).

Appellants further allege that the conduct was "extreme and outrageous" in that the appellees knew that execution proceedings could not be completed absent a hearing pursuant to *Swarb v. Lennox* and absent a revival of the judgment, as over five years had passed without a revival. Assuming this to be true,[5] appellants still have not shown the requisite conduct that is necessary to sustain an action under § 46 of the Restatement (Second) of Torts. These contentions may very well be valid defenses to any execution that would have been sought by the appellees, but they do not elevate the conduct of the appellees in pursuing their legal rights to "extreme and outrageous conduct."[6]

5. The *Swarb* decision specifically stated that the rule was to be given prospective application to judgments sought to be entered on clauses signed before and after June 16, 1970 against members of the class involved by confession after November 1, 1970, or the expiration of the next session of the Pennsylvania General Assembly if the 1970 session had permanently adjourned by that date. 314 F.Supp. at 1101.

6. As appellees contend it would be erroneous for this court to hold that a mistake as to the propriety of execution or its availability amounts to extreme or outrageous conduct.

The appellants have failed to plead all the elements of their case by the proper standards, and as such the lower court properly sustained the appellee's preliminary objections, for it was the duty of the court to determine, in the first instance, whether the appellee's conduct could reasonably be regarded as so extreme and outrageous as to permit recovery.

Order affirmed.

HOFFMAN, J., files a concurring and dissenting opinion, in which SPAETH, J., joins.

HOFFMAN, Judge, concurring and dissenting.

I concur in the Majority's conclusion that our Court has jurisdiction over this appeal, even though the lower court did not dismiss appellants' complaint without an oportunity to amend. However, I must dissent from the Majority's holding that appellants have failed to state a cause of action for intentional infliction of emotional distress. Therefore, I would reverse the order of the lower court sustaining appellees' preliminary objections to appellants' complaint.

Restatement of Torts (Second) § 46 (1965) provides, in pertinent part: "One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress, to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." Comment *d* elaborates upon the standard enunciated by § 46: ". . . Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!' " Cf. *Papieves v. Lawrence,* 437 Pa. 373, 263 A.2d 118 (1970).

The Majority states that appellees' conduct was not "extreme and outrageous" within the meaning of § 46 of the Restatement (Second) of Torts, even if we assume that appellees knew that execution proceedings could not be completed absent a hearing pursuant to *Swarb v. Lennox*, 314 F.Supp. 1091 (E.D.Pa.1970), aff'd 405 U.S. 191, 92 S.Ct. 767, 31 L.Ed.2d 138 (1972), and a revival of judgment. See at pg. 383 of 244 Pa.Super., at pg. 773 of 368 A.2d. I believe, however, that it would be outrageous and unconscionable for appellees to threaten an imminent sheriff's sale of appellants' property without further notice if they knew that the sale could not possibly be held or completed.[1] Appellants allege that appellees knew that *Swarb v. Lennox*, supra, precluded execution on appellants' property absent a prior hearing on the merits of appellees' claim.[2] Appellants also allege that

[1] It would be especially outrageous and unconscionable for appellee law firm and appellee law clerk to threaten action that they knew had no basis in law. Canons of Professional Responsibility DR 7–102(A)(1) and (2) provide: "In his representation of a client, a lawyer shall not: (1) File a suit, assert a position, conduct a defense, delay a trial, or take other action on behalf of his client when he knows or when it is obvious that such action would serve merely to harass or maliciously injure another. (2) Knowingly advance a claim or defense that is unwarranted under existing law, except that he may advance such claim or defense if it can be supported by good faith argument for an extension, modification, or reversal of existing law."

[2] The Majority questions whether *Swarb v. Lennox*, supra, would prevent an execution absent a hearing in those cases in which a confessed judgment was entered prior to 1970. See at pgs. 383–384 of 244 Pa.Super., at pgs. 773–774 of 368 A.2d. The court in *Swarb* specifically addressed this problem and held that those people with incomes under $10,000 who have signed consumer credit transaction documents or leases with confession judgment clauses "are entitled, prior to execution on confessed judgments entered prior to [November 1, 1970 or the expiration of the next session of the Pennsylvania General Assembly if the 1970 session had permanently adjourned by that date] to the opportunity of a hearing on such claims conducted in accordance with the procedural guarantees of the due process clause." *Swarb*, supra, at 1102. At such a hearing, appellees would bear the burden of proving default, execution of the obligation, the amount due, and other elements necessary to execution. If appellees sustained this burden, the judgment would be effective, for lien purposes, from the date of its entry. Appellants allege that they each earn less than $10,000 per year and that they each engaged in a consumer credit transaction.

appellees knew that a sheriff's sale could not be held until appellees complied with the requisite procedures, including notice to appellants, for reviving confessed judgments.[3]  Nevertheless, appellee, according to appellants' complaint, threatened an immediate sheriff's sale which could only be delayed by contacting appellee law firm or by paying the alleged debt; appellants would receive no other notice or opportunity to prevent the sale. In short, appellants aver that appellees intentionally used the threat of an immediate execution as a means of intimidation and harassment, despite the knowledge that such an execution would not be available unless appellees further complied with procedures designed to safeguard appellants' rights.[4]  Assuming that all of appellants' above allegations are true, *Eckborg v. Hyde-Murphy Co.,* 442 Pa. 283, 276 A.2d 513 (1971); *Shumaker v. Lear,* 235 Pa.Super. 509, 345 A.2d 249 (1975), I believe that such an abuse of the legal system is outrageous and extreme conduct, actionable under § 46 of the Restatement (Second) of Torts, if it proximately causes severe emotional distress.

I find additional support for my position in Comment *h* to § 46 which provides as follows: ". . . It is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery, or whether it is necessarily so.  Where reasonable men may differ, it is for the jury, subject to the control of the court, to determine whether, in the particular case, the conduct

---

3. See Rule 3025 Pa.R.C.P.; 42 Pa.C.S. § 3025. See also Rule 3033, Pa.R.C.P.; 42 Pa.C.S. § 3033.

4. Contrast Comment *g* to § 46 of the Restatement, Second, of Torts.  Comment *g* states that, "[t]he actor is never liable, for example, where he has done no more than to insist upon his legal rights in a permissible way, even though he is well aware that such insistence is certain to cause emotional distress."  In the case at bar, appellants assert that appellees impermissibly threatened immediate resort to a remedy not then available.

388

has been sufficiently extreme and outrageous to result in liability." At the very least, reasonable people may differ as to whether appellees' conduct has been sufficiently extreme and outrageous to result in liability. The order of the lower court should be reversed.

SPAETH, J., joins in this concurring and dissenting opinion.