Anne **PAWELEK**, individually,
etc., Plaintiffs,

v.

**PARAMOUNT STUDIOS CORPORATION, et al., Defendants.**

Nos. 83 C 5109, 83 C 5487.

United States District Court,
N.D. Illinois, E.D.

Sept. 27, 1983.

---

Anne Pawelek, pro se.

Robert W. Bergstrom, Ronald W. Teeple and John L. Leonard, Bergstrom, Davis & Teeple, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Anne Pawelek ("Pawelek") has filed each of these lawsuits as a purported class action against Paramount Studios Corporation, its Chairman Barry Diller and all other Paramount "owners and executives" (collectively "Paramount" in the singular). Both suits share a single gravamen: the claimed impropriety of Paramount's inclusion of "Polish jokes" in its motion picture "Flash-dance."[1] Paramount has now moved pursuant to Fed.R.Civ.P. ("Rule") 12(b)(6) to dismiss each of Pawelek's pro se Complaints (collectively the "Complaint" in the singular) for failure to state a claim. For the reasons stated in this memorandum opinion and order, Paramount's motion is granted.

### Motion To Dismiss

■ Understandably only the Complaint in 83 C 5109 identifies a specific jurisdictional source:[2] 18 U.S.C. §§ 241–42, federal criminal statutes defining civil rights violations. But as Paramount points out, it is well settled no private right of action inheres in those criminal provisions. *Aldabe v. Aldabe,* 616 F.2d 1089, 1092 (9th Cir.1980) (per curiam); *Weiland v. Byrne,* 392 F.Supp. 21, 22 (N.D.Ill.1975).

However, in keeping with our judicial system's solicitude towards pro se litigants,[3] this Court has searched for other viable claims that might lurk within the Complaint. It has considered three possibilities:

1. a claim under the various federal civil rights statutes (such as 42 U.S.C. §§ 1983 and 1985(3));[4] and

2. and 3. state law claims for defamation and intentional infliction of emotional distress.[5]

---

1. 83 C 5109 was originally brought in this Court, while 83 C 5487 was removed by Paramount from the Circuit Court of Cook County.

2. As n. 1 indicates, 83 C 5487 was originally filed in a state court of general (not limited) jurisdiction.

3. See *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 595, 30 L.Ed.2d 652 (1972) (per curiam) (allegations of a pro se complaint are held to less stringent standards than formal pleadings drafted by lawyers). It is not wholly clear that Pawelek is equally entitled to such special consideration in light of her insistence that she wanted to go it alone, rejecting the highly qualified counsel (a law school professor well-versed in the First Amendment area) appointed by this Court to represent her without pay. Indeed this Court had previously appointed the lead partner in one of Chicago's most prominent litigation firms to represent Pawelek pro bono publico, but that counsel (who was willing to take the case) had to withdraw because it turned out his firm represented the owner of a substantial investment interest in "Flashdance." Pawelek has sent this Court a postcard (which this Court promptly made a part of the court record) (1) suggesting the efforts to appoint counsel were really directed at setting her up for a fall and (2) stating she insisted on proceeding pro se. Such insistence effectively forced this Court and its law clerk Richard Levy, Esq. to perform her legal research, for her own brief (which apart from its rhetoric simply identified (1) organizations offended by the "Polish jokes" in "Flashdance" and (2) instances in which the Polish American Guardian Society pressured others into retracting anti-Polish statements) is wholly unresponsive to the *legal* issues posed by the motion to dismiss. Casting this Court in the role of "guardian ad litem" not only unnecessarily squanders scarce judicial resources but also is fundamentally at odds with our adversarial system of justice. See *Parisie v. Greer,* 705 F.2d 882, 888 (1983) (Wood, J., dissenting).

4. That claim was included in Pawelek's original complaint in 83 C 5109 but was omitted from her amended complaint in that case.

5. As this Court noted in its August 25, 1983 Order (the "Order"), the existence of diversity

But the legal sufficiency of the Complaint cannot be salvaged under any of those theories.

■ As for the Complaint's arguable civil rights claim, this Court's independent research has disclosed no authority for the proposition that group defamation by *private* actors—the gravamen of the Complaint—infringes any federal constitutional or statutory rights. Rather the case law establishes just the opposite. *See, e.g., United Brotherhood of Carpenters and Joiners of America v. Scott,* —— U.S. ——, 103 S.Ct. 3352, 3356–57, 77 L.Ed.2d 1049 (1983) (Section 1985(3) does not apply to "wholly private conspiracies" to abridge federal rights that shield the individual from *government* action); *Paul v. Davis,* 424 U.S. 693, 701–10, 96 S.Ct. 1155, 1160–65, 47 L.Ed.2d 405 (1976) (mere defamation even by state officials is not actionable under Section 1983 [6]). Absent any supporting authority, this Court is certainly not willing to embrace such a bizarre theory of federal civil rights liability.

■ Pawelek's failure to plead special (i.e., pecuniary) damages [7] defeats any possible defamation claim. As such cases as *Whitby v. Associates Discount Corp.,* 59 Ill. App.2d 337, 340, 207 N.E.2d 482, 484 (3d Dist.1965) teach, Illinois law requires proof of special damages unless the defamatory statement (whether characterized as libel or slander) falls within one of the four "per se" defamatory categories:

1. those imputing the commission of a criminal offense;

2. those imputing infection with a communicable disease of any kind which, if true, would tend to exclude one from society;

3. those imputing inability to perform or want of integrity in the discharge of duties of office or employment;

4. those prejudicing a particular party in his profession or trade.

■ Obviously the "Polish jokes" mentioned in "Flashdance" [8]—however distasteful or in bad taste they are—do not fit within the first two categories. And the inapplicability of the third and fourth categories requires little explanation. All the controlling Illinois authorities uniformly define those two categories to include defamatory statements that *directly* tend to injure an individual's business or employment prospects and to exclude those that merely affect his "general reputation in the community." 33A I.L.P. *Slander and Libel* §§ 27–28, at 45–53. At worst the "Polish jokes" in "Flashdance" indirectly disparaged the intelligence of Polish-Americans and thereby injured their "general reputation in the community." But to suggest the movie's use of those jokes *directly* impaired the ability of such individuals (either individually or collectively) to secure employment or to conduct business strains creduli-

jurisdiction requires a showing that Pawelek's Illinois citizenship differs from that of all the joined defendants, including "all owners and executives" of Paramount. Paramount has made such a showing:

1. Order at 2 found diversity of citizenship between Pawelek on the one hand and Paramount and the only other defendant identified by name (Barry Diller) on the other.

2. As for the citizenship of Paramount's "owners and executives," the uncontroverted affidavit of Paramount vice president Paul Springer indicates:

(a) Paramount is wholly owned by Gulf & Western Industries, Inc., which is incorporated in Delaware and has its principal offices in New York.

(b) All of Paramount's "corporate officers" (which presumably encompass all "execu-

tives" sued by Pawelek) are citizens of states other than Illinois.

6. Of course the Fourteenth Amendment inhibits only *state* action violating due process or equal protection rights.

7. Pawelek alleges only psychic injury from her exposure to "Flashdance."

8. Pawelek's Complaint identifies only one of the offending jokes told in "Flashdance":

What does a Polack call a pimple on his ass?
A brain tumor.

This Court will presume the other "Polish jokes" used in the movie exhibit the same kind and degree of offensiveness.

ty. Accordingly the Complaint fails to state a claim for defamation.[9]

■ Nor can the Complaint be sustained as an action for intentional infliction of emotional distress. As outlined in *Debolt v. Mutual of Omaha*, 56 Ill.App.3d 111, 113, 13 Ill.Dec. 656, 658, 371 N.E.2d 373, 375 (1st Dist.1978), that tort has four components:

1. extreme and outrageous conduct;

2. intent by the defendant to cause, or a reckless disregard of the probability of causing, emotional distress;

3. severe or extreme emotional distress suffered by the plaintiff; and

4. an actual and proximate causation of emotional distress by the defendant's outrageous conduct.

Neither the first nor the third element is adequately alleged by the Complaint. As underscored in *Public Finance Corp. v. Davis*, 66 Ill.2d 85, 90, 4 Ill.Dec. 652, 654, 360 N.E.2d 765, 767 (1976) (quoting Restatement (Second) of Torts ("Restatement") § 46, comment (d) (1965)):

Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency. . . .

However objectionable, the telling of "Polish jokes" simply does not attain that degree of outlandishness. Such conduct "amounts to no more than insults or indignities," which the Illinois courts tell us as a matter of law cannot be deemed "extreme and outrageous." *Farnor v. Irmco Corp.*, 73 Ill.App.3d 851, 856, 29 Ill.Dec. 894, 899, 392 N.E.2d 591, 596 (1st Dist.1979). *Accord, Public Finance*, 36 Ill.App.3d 99, 104, 343 N.E.2d 226, 230 (1st Dist.), *aff'd*, 66 Ill.2d 85, 4 Ill.Dec. 652, 360 N.E.2d 765 (1976) (quoting Restatement § 46, comment (f)) ("[T]he mere fact that the actor knows that the other will regard the conduct as insulting, or will have his feelings hurt, is not enough").[10]

*Public Finance*, 66 Ill.2d at 90, 4 Ill.Dec. at 654, 360 N.E.2d at 767, emphasis in original, interprets the requirement of "severe emotional distress" in an equally stringent manner:

[I]nfliction of emotional distress alone is not sufficient to give rise to a cause of action. The emotional distress must be *severe.* Although fright, horror, grief, shame, humiliation, worry, etc. may fall within the ambit of the term "emotional distress," these mental conditions alone are not actionable. "The law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it. The intensity and the duration of the distress are factors to be considered in determining its severity." [Restatement § 46,] Comment (j). *See also* Prosser, *Law of Torts* sec. 12, at 54 (4th ed. 1971).

---

**9.** Paramount chose to take two other routes to reach the same destination:

1. No action can lie for *group* defamation.
2. "Polish jokes" merely amount to nonactionable name-calling.

While this Court reserves judgment on those arguments, their shortcomings should be mentioned in passing:

1. Paramount's first argument mischaracterizes Illinois law. *Latimer v. Chicago Daily News, Inc.*, 330 Ill.App. 295, 297, 71 N.E.2d 553, 554–55 (1st Dist.1947) permits the imposition of liability for defamatory comments leveled against a group if such comments could be said "with certainty" to include *every* member of that group. *Accord, Brewer v. Hearst Publishing Co.*, 185 F.2d 846, 848–49 (7th Cir.1950). Arguably a stereotypical Polish-American who is the butt of all "Polish jokes" may be viewed as representative of *every* individual in that ethnic group.

2. By attributing specific undesirable qualities (e.g., ignorance) to Polish or Polish-American individuals, "Polish jokes" may go beyond mere name-calling. *Cf. McGuire v. Jankiewicz*, 8 Ill.App.3d 319, 320, 290 N.E.2d 675, 676 (1st Dist.1972).

**10.** Moreover, the Illinois courts have found at least equally offensive conduct insufficiently "extreme and outrageous" as a matter of law. *See e.g., Irving v. J.L. Marsh, Inc.*, 46 Ill.App.3d 162, 4 Ill.Dec. 720, 360 N.E.2d 983, 985–86 (3d Dist.1977) (dismissing claim of intentional infliction of emotional distress against defendant who required plaintiff as a precondition for returning unwanted merchandise to sign a sales slip containing the notation "Arrogant Nigger refused exchange—says he doesn't like products").

Emotional distress experienced by a "reasonable" Polish-American when told a "Polish joke" could not possibly approach that degree of severity. Such an individual will likely feel humiliated or insulted. He or she may well react with justifiable anger toward the source of the joke. But as the quoted passage makes clear, such reactions lack the requisite severity as a matter of law. *See also Irving,* 46 Ill.App.3d at 167, 4 Ill.Dec. at 723, 360 N.E.2d at 986. For those reasons, no viable claim for intentional infliction of emotional distress can be gleaned from the Complaint.

### Conclusion

Having failed to detect any cognizable legal theory, this Court must grant Paramount's motion to dismiss.[11] Because this Court (unaided by the argument of counsel for plaintiff, as the result of her refusal to accept assistance) cannot foresee that the Complaint can be repleaded to state a cause of action, the actions themselves are dismissed.

---

11. This disposition makes it unnecessary to consider Paramount's First Amendment arguments. Suffice it to say on that score the immediate relief sought by Pawelek—injunctive in nature—would plainly be unavailable in any case on prior restraint grounds.