**Ivo LEKICH**

v.

**INTERNATIONAL BUSINESS MACHINES CORPORATION.**

Civ. A. No. 78–1638.

United States District Court,
E. D. Pennsylvania.

March 30, 1979.

Harry C. J. Himes, Philadelphia, Pa., for plaintiff.

K. Robert Conrad, Alan K. Cotler, Pepper, Hamilton & Scheetz, Philadelphia, Pa., for defendant.

## OPINION

JOSEPH S. LORD, III, Chief Judge.

This diversity action arises out of defendant's termination of plaintiff's employment. Plaintiff Lekich alleges that his dismissal involved defamation, intentional infliction of emotional distress, wrongful discharge and intentional interference with prospective contractual relations. The case is before us on defendant's motion for summary judgment. Because we conclude that plaintiff's affidavit raises no genuine issue of material fact, International Business Machines Corporation is entitled to judgment as a matter of law and we will grant defendant's motion.

## I. BACKGROUND:

The following facts are not genuinely disputed:

*A.* Plaintiff Ivo Lekich was hired in December 1975 by defendant International Business Machines Corporation (IBM) as an associate marketing representative at defendant's Valley Forge, Pennsylvania office.

*B.* Plaintiff had no oral or written agreement with defendant concerning the length of his employment; he was thus employed under an at-will contract.

*C.* From December 1975 to August 1976 plaintiff made long distance phone calls from an extension assigned to him. Plaintiff paid for these calls when billed by defendant.

*D.* Between December 1975 and September 1976, plaintiff made one long distance telephone call, in April 1976, from an extension other than his own. Plaintiff was not billed for this call nor did he volunteer payment.

*E.* From October 1976 to February 1977 plaintiff made twenty long distance telephone calls from extensions other than his own. Plaintiff was not billed for these calls nor did he volunteer payment. No long distance telephone calls were made from his own phone extension during this period.

*F.* Sixteen of the telephone calls made from extensions other than plaintiff's own were to his parents in New York. Plaintiff's mother was ill during this time.

*G.* IBM discovered by chance that plaintiff was making long distance telephone calls from an extension other than his own. An investigation was conducted and the twenty calls were discovered.

*H.* On May 2, 1977, two of plaintiff's immediate supervisors, Jack Cooper and Mike Ring, met separately with plaintiff to discuss the long distance telephone calls. Plaintiff admitted making the calls and insisted that he intended to pay for them when billed. Cooper and Ray separately determined that Lekich knew IBM would not discover the telephone calls in the course of its ordinary billing procedure and that Lekich knowingly violated the IBM policy of paying for personal calls. Plaintiff was dismissed from employment with IBM.

*I.* Pursuant to IBM's Open Door policy, an intracompany appeal procedure, plaintiff filed three appeals. Each time IBM investigators reviewed the case. Each review concluded that Lekich had knowingly breached company policy.

*J.* On June 3, 1977, C. B. Rogers, Jr., an IBM division president, wrote to Lekich that the conclusion that plaintiff had knowingly breached company policy was supported by the facts and that the decision to dismiss him was correct.

*K.* On August 8, 1977, Frank T. Cary, chairman of the board of IBM, wrote to plaintiff that the decision to terminate his employment was sound and would be upheld.

*L.* The only known release by IBM of any information concerning Lekich to a third party was a January 13, 1978 letter to American Honda Motor Company, Inc. stating only plaintiff's position and dates of employment with defendant, sent at the express written request of Lekich.

*M.* On May 16, 1978 Lekich filed a four-count complaint alleging: (a) that he had been defamed by defendant; (b) that IBM

had intentionally inflicted emotional distress on him; (c) that defendant tortiously and wrongfully discharged him from employment; and (d) that IBM intentionally interfered with plaintiff's prospective contractual relations.

*N.* On December 12, 1978 defendant filed a motion for summary judgment dismissing with prejudice all claims of plaintiff.

## II. THE DEFAMATION COUNT:

■ Plaintiff bases his claim for defamation on statements allegedly made during the May 2, 1977 meeting with Jack Cooper, his immediate manager, and on statements made in the letters of June 3, 1977 and August 8, 1977 from, respectively, C. B. Rogers, Jr., an IBM division president, and Frank T. Cary, chairman of the board. Lekich avers that he was falsely accused of the crime of theft of telephone services.

The law of Pennsylvania governs this case.[1] Defendants argue that they should have summary judgment on plaintiff's defamation claim because under Pennsylvania law Lekich's allegations fail in four respects: (1) there was no publication of the allegedly defamatory statements; (2) all of the allegedly defamatory statements were substantially true; (3) all of the allegedly defamatory statements were privileged; and (4) any allegedly defamatory statements made at the May 2, 1977 meeting with Jack Cooper are not actionable because barred by the Pennsylvania one-year statute of limitations.

Publication of an allegedly false statement is a necessary element of the tort of defamation. *Harbridge v. Greyhound Lines, Inc.,* 294 F.Supp. 1059, 1064 (E.D.Pa. 1969) (Pennsylvania law applied); Restatement (Second) Torts, §§ 558, 577 (1977). The burden of proving publication is on the plaintiff. 12 P.S. § 1584a(1)(b) and 42 Pa.C. S.A. § 8343(a)(2) of Pennsylvania's new Judicial Code.

On the question of publication, Lekich has raised no issue of material fact. The allegedly false statements made by Cooper, Rogers and Cary are plaintiff's sole basis for pleading defamation. Rogers and Cary wrote to plaintiff. Lekich makes no allegation, either sworn or unsworn, that copies of these letters were revealed to third parties. Therefore, as a matter of law, the letters were not published. Likewise, plaintiff's conversation with Cooper on May 2, 1977 was a private meeting with no third person being present.[2] Even if false statements were made, they were thus not published. *See Campbell v. Willmark Service System, Inc.,* 123 F.2d 204, 206 (3d Cir. 1941).

Lekich's account of the alleged tort presents no genuine issue of material fact on the element of publication. Thus, any factual disputes relevant to the defamation claim, even if genuine, are not material.[3] Defendant is entitled to summary judgment as a matter of law on plaintiff's first count.

## III. THE INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM:

■ Pennsylvania has adopted the definition of intentional infliction of emotional

---

1. Because this is a diversity action, state law controls. The Pennsylvania choice of law rules dictate that Pennsylvania law be applied here. *Griffith v. United Air Lines, Inc.,* 416 Pa. 1, 203 A.2d 796 (1964).

2. In his complaint, Lekich claims that both Ring and Cooper were present at the May 2, 1977 meeting. This is denied by Cooper in his affidavit attached to defendant's motion for summary judgment. Lekich's allegation in his complaint that Ring was present at the meeting is not sufficient to refute evidence provided by affidavit on a motion for summary judgment. F.R.Civ.P. 56(e).

3. Among the disputed factual issues is an allegation by Lekich, in his affidavit, that he met two employees of defendant at a night club and that one of them asked plaintiff if he had "made any long distance calls to Puerto Rico recently." Lekich offers no relevant argument concerning this incident. (At oral argument, plaintiff's counsel argued only that the remark "embarrassed" plaintiff.) The absence of relevant argument thus leaves us uninformed as to what significance, if any, plaintiff attaches to this alleged encounter. If the night club experience has any importance, it is for plaintiff to argue, not us.

distress set forth in Restatement (Second) of Torts, § 46 (1965):

"One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm."

See e. g., Jones v. Nissenbaum, Rudolph & Seidner, 244 Pa.Super. 377, 368 A.2d 770, 772 (1976); Forster v. Manchester, 410 Pa. 192, 189 A.2d 147, 151 (1963).

Comment d of Restatement § 46 requires that liability be predicated on conduct

"[s]o outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'outrageous!' "

And Comment h instructs that "it is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery, or whether it is necessarily so."

Lekich claims that IBM's conduct in terminating his employment was so outrageous and extreme as to exceed the bounds of decency of a civilized community. We conclude, as a matter of law, that on the undisputed material facts of this case we could not permit a jury to find that defendant's conduct was outrageous. We believe that the procedure followed by IBM in terminating plaintiff's employment, including the three Open Door appeals, precludes a reasonable finding that the dismissal was beyond the bounds of decency. Compare, e. g., Papieves v. Laurence, 437 Pa. 373, 263 A.2d 118 (1970); Chuy v. Philadelphia Eagles Football Club, 431 F.Supp. 254 (E.D.Pa. 1977), aff'd in banc 77–1411 (3d Cir. March 9, 1979) (Pennsylvania law applied).

Because this indispensable element of the tort of intentional infliction of emotional distress is totally lacking, any factual questions relevant to plaintiff's second count are immaterial and the claim must be dismissed.

## IV. THE WRONGFUL DISCHARGE CLAIM:

Lekich claims that IBM's termination of his employment was in bad faith and therefore a tortious breach of defendant's implied duty to deal fairly and in good faith with its employees.

This claim is insupportable under Pennsylvania law on the facts here. The leading Pennsylvania case on termination of at-will employment relations is Geary v. United States Steel Corp., 456 Pa. 171, 319 A.2d 174 (1974). The rule that emerges from Geary is that

"Absent a statutory or contractual provision to the contrary, the law has taken for granted the power of either party to terminate an employment relationship for any reason or no reason." (footnote omitted).

319 A.2d at 176. Cf. Restatement of Torts, § 762 (expressly adopted by Geary).

The only limitation on this right to dismiss at will is that the discharge not violate a "clear mandate of public policy." 319 A.2d at 179–180. To police this limitation, the court intimated that a "plausible and legitimate reason for terminating an at-will employment relationship" should be required. Id. We do not take this suggestion to be authority for substitution of our judgment of the merits of the dismissal for that of the employer. Rather, we read the "plausible and legitimate" language of Geary as requiring a judgment that the termination was not illegitimate in the sense of being contrary to public policy. See e. g., Reuther v. Fowler & Williams, Inc., 386 A.2d 119 (Pa.Super.1978) (allegation of discharge in retaliation for employee taking week off for jury duty states cause of action for wrongful dismissal). A discharge may be for good reason or for no reason, but not for an illegitimate reason.

We are satisfied that plaintiff's charge of conduct in violation of public policy and in bad faith does not raise a genuine issue here. Lekich's protestations that he intended ultimately to reimburse IBM for the long

distance calls notwithstanding, defendant's conclusion that plaintiff knowingly and deliberately violated the company policy of payment for personal calls could not be found by a jury to be unreasonable. The explanation offered by Lekich for use of extensions other than his own is self-contradictory and often absurd.[4] Also, Lekich has not even offered an explanation for allowing seven months to pass without reporting any of the telephone calls or the non-receipt of a bill. Given these circumstances, there would be no room for a jury to doubt that IBM's disbelief of plaintiff's excuses was in good faith.

The manifest reasonableness of defendant's conduct under the undisputed facts satisfies the *Geary* standards for terminating an at-will employment relationship. Those facts that remain disputed are not material because resolution in plaintiff's favor cannot alter our legal conclusion that defendant acted fairly.[5] Accordingly, on the wrongful discharge cause of action, IBM is entitled to judgment as a matter of law.

## V. THE INTENTIONAL INTERFERENCE WITH PROSPECTIVE CONTRACTUAL RELATIONS CLAIMS:

█ Lekich's final allegation is that IBM tortiously interfered with plaintiff's prospective contractual relationships by publishing defamatory statements and terminating his employment.

Defendant, relying on *Glenn v. Point Park College,* 441 Pa. 474, 272 A.2d 895 (1971), responds that plaintiff has failed to raise a genuine issue of fact as to material elements of the cause of action for intentional interference with prospective contractual relationships under Pennsylvania law. We agree with defendant.

The parties disagree about the precise elements that *Glenn* requires a plaintiff alleging intentional interference with prospective contractual relationships to set forth. We need not, however, resolve this dispute because there can be no doubt that proof of *intentional* interference is a *sine qua non* of the tort. No such proof is possible here, nor is it seriously alleged. We conclude, as a matter of law, that the unchallenged fact that IBM did not release any information about the Lekich matter to any third party, except the dates of employment and title of position released to American Honda at Lekich's request, precludes a finding of *intentional* interference with prospective contractual relations. Again, plaintiff's claim cannot survive defendant's Rule 56 motion.

4. In his memorandum opposing defendant's motion for summary judgment, Lekich attributes his use of extensions other than his own for long distance calls to the nature of his work responsibilities, alleging that his duties took him away from his desk often and for long periods of time. However, in plaintiff's affidavit appended to his memo opposing summary judgment, Lekich avers the following:

> 20. When I would call and speak with my parents, we would be conversing in Croation. This would make me feel embarrassed, self-conscious and uncomfortable because I knew the other members of my cubicle would hear me speaking a foreign language and would be uncomfortable because they could not speak or understand it.
> 21. After my mother became ill, I became even more uncomfortable making calls to my family because of the personal nature of the phone calls and my self-consciousness due to speaking Croation, all in the hearing range of my co-workers in the cubicle. My co-workers and my manager, John Meyers, at IBM

were aware of this which served to intensify my sensitivity to the situation.

Not only is this explanation contrary to that offered in the memorandum, but it is also incoherent. We fail to comprehend how Lekich could simultaneously be uncomfortable because his office-mates spoke no Croation and embarrassed because they would overhear his private conversations.

5. Plaintiff argues that summary judgment is premature because some discovery is still outstanding. The discovery that plaintiff refers to involves questions concerning defendant's world-wide telephone records. IBM has objected to this discovery as both irrelevant and impossibly burdensome. Because we have concluded that defendant acted fairly and in good faith towards plaintiff on the undisputed facts of this case, nothing that Lekich could discover about other incidents of telephone abuse would change this result. Therefore, the outstanding discovery, even if unobjectionable, is not necessary for us to decide this case.

## VI.  CONCLUSION:

Plaintiff has failed to advance any plausible proof of at least one element of each of his counts.  This failure makes the disputes of fact raised by the affidavits immaterial, even if genuine.  Accordingly, defendants are entitled to summary judgment as a matter of law.

### ORDER

AND NOW, this 28th day of March, 1979, having concluded that based on the pleadings and affidavits and argument, there is no genuine dispute as to any material fact and that defendant is entitled to judgment as a matter of law, it is hereby ORDERED that defendant's motion for summary judgment is GRANTED.