Leonard E. PRICE, Plaintiff,

v.

BLYTH EASTMAN PAINE WEBBER, INCORPORATED, Defendant.

Civ. A. No. 83–1813.

United States District Court, W.D. Pennsylvania.

Dec. 12, 1983.

Leonard E. Price, Pittsburgh, Pa., for plaintiff.

John Winship Read, Mary A. Cascio, Pittsburgh, Pa., for defendant.

## OPINION

MANSMANN, District Judge.

This matter is before the Court on a Motion to Dismiss filed by Defendant Blyth Eastman Paine Webber, Incorporated ("Blyth Eastman"). Plaintiff Leonard E. Price brought this action as a result of the alleged breach of a financing agreement by Blyth Eastman. For the reasons set forth below, we hereby deny Defendant's Motion in part and grant it in part.

\* \* \* \* \* \*

### Factual Background

In 1981, Plaintiff approached the Medical Center of Beaver County (the "Center") for the purpose of purchasing certain property from the Center for use as a nursing home. Plaintiff and the Center negotiated the material provisions of a sales agreement but Plaintiff needed the approval of the Health Systems Agency ("HSA") in order to operate the proposed nursing home. To obtain HSA's approval, Plaintiff had to procure financing for the project that was satisfactory to HSA. Therefore, Plaintiff contacted Defendant to determine if Defendant would underwrite a bond issue for Plaintiff's nursing home project, thereby enabling Plaintiff to obtain the financing necessary for HSA approval.

By letter dated October 27, 1981, Defendant offered to underwrite a bond issue for the project. The pertinent part of the letter states:

This letter shall serve as a binding agreement upon both parties hereto if accepted and returned to the investment banker within 10 business days from the date of this letter. Failure to act within the 10 day period shall render this letter null and void.

*See* Exh. A to Complaint.

According to Plaintiff, he complied with the terms of the letter, returning the letter within the prescribed ten-day period after signing and dating it.

Plaintiff thereupon engaged the services of an accountant, an architect and a builder, incurring these expenses as well as other expenses in preparation for the project. According to Plaintiff, he had also reached "substantial agreement" with the Center regarding the terms of the sales agreement for the property so that the only major obstacle remaining was the financing.

In February 1982, Blyth Eastman informed Plaintiff that it would not underwrite the bond issue for the project.

According to Plaintiff, he then tried to obtain alternative financing for the nursing home project in time to purchase the property from the Center but was unsuccessful. He therefore had to abandon the project.

Plaintiff brought the present action in the Court of Common Pleas of Allegheny County, alleging breach of contract (count I) and intentional infliction of mental distress (count II). Plaintiff seeks lost profits under count I and seeks compensatory and punitive damages under count II.

Defendant subsequently removed the case to federal court and filed the Motion now before us pursuant to Fed.R.Civ.P. 12(b)(6).

\* \* \* \* \* \*

On a Fed.R.Civ.P. 12(b)(6) motion to dismiss for failure to state a claim, the burden lies with the moving party. *Johnsrud v. Carter*, 620 F.2d 29, 33 (3d Cir.1980). Because such a motion results in a determination on the merits at an early stage of plaintiff's case, the plaintiff is afforded the safeguard of having all of its allegations

taken as true and having all inferences drawn in its favor. *Mortensen v. First Fed. Sav. and Loan Ass'n,* 549 F.2d 884, 891 (3d Cir.1977).

If the court considers matters outside of the pleadings, the motion is converted into a Fed.R.Civ.P. 56 motion for summary judgment. *Id.* See also Fed.R.Civ.P. 12(b).

Under Fed.R.Civ.P. 56(c), summary judgment may be entered only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

The Court of Appeals for the Third Circuit has made clear that any doubts as to the existence of genuine issues of fact are to be resolved against the moving parties. *Continental Ins. Co. v. Bodie,* 682 F.2d 436, 438 (3d Cir.1982); *Hollinger v. Wagner Mining Equipment Co.,* 667 F.2d 402, 405 (3d Cir.1981). Further, the facts and inferences to be drawn from the facts must be viewed in the light most favorable to the party opposing the motion. *Continental Ins. Co. v. Bodie, supra* at 438; *Betz Laboratories, Inc. v. Hines,* 647 F.2d 402, 404 (3d Cir.1981).

Under Fed.R.Civ.P. 56(e), however, a party resisting a summary judgment motion may not rest upon the mere allegations or denials of his pleading. *Ness v. Marshall,* 660 F.2d 517, 519 (3d Cir.1981). In opposing the motion, his response "must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him." *Id.*

\* \* \* \* \* \*

## COUNT I

Defendant moves to dismiss count I of the Complaint, contending that Plaintiff failed to return his signed acceptance of the October 27, 1981 offer within the prescribed ten-day period. Thus, Defendant argues that there was no binding agreement between Plaintiff and Defendant for Defendant to breach.

Defendant attaches an affidavit from the senior vice-president of Blyth Eastman to support its allegation that the October 27, 1981 letter was not returned to Defendant within the requisite period. The affidavit also states that Defendant did not receive the letter until May 1982 when it arrived as an enclosure to another letter from Plaintiff.

Plaintiff contends that he did return the October 27 letter within the prescribed period. Indeed, Plaintiff asserts that he signed and returned the letter the very day he received it from Defendant. Plaintiff submits the affidavits of his secretary and his former law clerk, as well as his own affidavit, in support of his position.

Because this Court considered the affidavits when deciding Defendant's Motion to Dismiss as to count I, the Motion is converted to a Fed.R.Civ.P. 56 Motion for Summary Judgment as to that count. Fed. R.Civ.P. 12(b).

In light of the conflicting affidavits, we must conclude that there is a genuine issue of material fact as to the existence of a binding contract. Therefore, we will deny Defendant's Motion with respect to count I.

\* \* \* \* \* \*

## COUNT II

Defendant also moves to dismiss count II of the Complaint, contending that Plaintiff's allegations, even when taken as true, do not state a claim for intentional infliction of emotional distress. Specifically, Defendant asserts that the conduct of which Plaintiff complains is not extreme and outrageous within the meaning of the law.

Plaintiff responds that Defendants' actions were outrageous and do sustain a claim for intentional infliction of emotional distress.

The Pennsylvania courts have signalled their acceptance of the tort of intentional infliction of emotional distress as it is defined by § 46(1) of the Restatement (Second) of Torts (the "Restatement"). *See, e.g., Papieves v. Lawrence,* 437 Pa.

373, 263 A.2d 118 (1970); *Forster v. Manchester*, 410 Pa. 192, 189 A.2d 147 (1963); *Jones v. Nissenbaum, Rudolph & Seidner*, 244 Pa.Super. 377, 368 A.2d 770 (1976). Section 46(1) provides:

> One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.

RESTATEMENT (SECOND) OF TORTS § 46(1), at 71 (1965).

■ Thus, there are four elements which comprise the tort:

> (1) the conduct must be extreme and outrageous; (2) the conduct must be intentional or reckless; (3) it must cause emotional distress; and (4) the distress must be severe.

*Chuy v. Philadelphia Eagles Football Club*, 595 F.2d 1265, 1273 (3d Cir.1979).

The Restatement's commentary indicates that only conduct that is "extraordinarily despicable" supports a claim for intentional infliction of emotional distress. *Cautilli v. GAF Corp.*, 531 F.Supp. 71, 72 (E.D.Pa. 1982). The "comments" state in pertinent part:

> Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

RESTATEMENT (SECOND) OF TORTS § 46(1), comment d at 73 (1965).

Pennsylvania courts and federal courts applying Pennsylvania law consistently refuse to extend this tort to anything other than the most extreme and outrageous conduct. For example, in *Papieves v. Lawrence, supra* the court held that the mishandling and concealment of a dead child's body could constitute the type of wanton or outrageous conduct required to sustain this

tort. In *Beidler v. W.R. Grace, Inc.*, 461 F.Supp. 1013 (E.D.Pa.1978), *aff'd*, 609 F.2d 500 (3d Cir.1979), the court found that an employer's harassment of an employee, leading to the employee's termination, was not the type of extreme, outrageous conduct that gives rise to a cause of action.

Other cases indicate that the tort is interpreted very narrowly. *See, e.g., Moolenaar v. Atlas Motor Inns, Inc.*, 616 F.2d 87, 89 (3d Cir.1980); *Kimmel v. Peterson*, 565 F.Supp. 476, 499 (E.D.Pa.1983); *Kutner v. Eastern Airlines, Inc.*, 514 F.Supp. 553, 557 (E.D.Pa.1981); *Lekich v. International Bus. Mach. Corp.*, 469 F.Supp. 485, 487–88 (E.D.Pa.1979); *Wenzer v. Consolidated Rail Corp.*, 464 F.Supp. 643, 650 (E.D.Pa.), *aff'd*, 612 F.2d 576 (3d Cir.1979).

The limited scope of the tort permits much conduct that is offensive or unkind. The Restatement provides:

> The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. The rough edges of our society are still in need of a good deal of filing down, and in the meantime plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind.

RESTATEMENT (SECOND) OF TORTS § 46(1), comment d at 73 (1965). *See also Cautilli v. GAF Corp., supra* at 74.

■ It is for the court to determine in the first instance whether the conduct of which a plaintiff complains is sufficiently extreme and outrageous as to permit recovery for the intentional infliction of emotional distress. RESTATEMENT (SECOND) OF TORTS § 46(1), comment h at 77 (1965). *See also Cautilli v. GAF Corp., supra* at 74; *Kutner v. Eastern Airlines, Inc., supra* at 557; *Lekich v. International Bus. Mach. Corp., supra* at 488.

■ We find that, as a matter of law, the conduct alleged by Plaintiff in his Complaint, even if fully proven, is not sufficiently "extreme and outrageous" as to permit recovery for intentional infliction of

emotional distress. Thus, Defendant's conduct cannot reasonably be considered beyond the bounds of decency in a civilized society. The breach of contractual agreements and the concomitant loss of profits and other business opportunities is a fact of life in a complex society such as ours where large numbers of financial transactions are consummated every day. While undesirable, the breach of commercial agreements, even where the financial loss is great, does not usually constitute the type of outrageous conduct envisioned by the Restatement and the case law.

Indeed, Plaintiff's allegations support only a claim for breach of contract for which he may not recover mental distress damages. In this regard, the Restatement provides:

> Recovery for emotional disturbance will be excluded unless the breach also caused bodily harm or the contract or the breach is of such a kind that serious emotional disturbance was a particularly likely result.

RESTATEMENT (SECOND) OF CONTRACTS § 353, at 149 (1981).

The alleged contractual breach in this case did not cause bodily harm nor was the contract or breach thereof such a kind that serious emotional disturbance was a particularly likely result. *See id.*, comment a at 149 (no recovery unless the contract was one where there was a particularly likely risk of "sudden impoverishment or bankruptcy"). *See also Brooks v. Hickman*, 570 F.Supp. 619 (W.D.Pa.1983) (breach of a contract causing loss of a "nest egg" not sufficient).

Accordingly, we must conclude that Plaintiff has failed to state a claim for *intentional infliction of emotional distress.* Therefore, Defendant's Motion to Dismiss will be granted as to count II of the Complaint.

An appropriate Order will issue.